IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENNETH SHARPLES,<br>K92574, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | |
| SGT. BEBOUT,<br>LT. BEBOUT,<br>C/O LEE,<br>C/O PRESSWOOD,<br>C/O GRIFFIN,<br>C/O COX,<br>WARDEN WILLS,<br>COUNSELOR QUICK,<br>JACKIE STUEVE JR.,<br>DOUGLAS BRAND,<br>JONATHAN DYE,<br>RACHEL ALFARO,<br>QUIANDRA MORRISON,<br>SHERI BUETTNER,<br>TERA WILKES, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 23-cv-997-DWD |
| Defendants.[1] | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Kenneth Sharples, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Western Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while housed at Menard Correctional Center (Menard). Plaintiff claims that the defendants

---

[1] The Clerk of Court is **DIRECTED** to replace Defendant Sgt. Bebout with Shana Moore (Doc. 23 at 1, n.1), Lt. Bebout with Nicholas Bebout (Doc. 19), C/O Lee with Daniel Lee (Doc. 19), C/O Griffen with Brandon Griffin (Doc. 19), C/O Presswood with Robert Presswood (Doc. 19), C/O Cox with Curtis Cox (Doc. 19), and Counselor Quick with Sara Quick (Doc. 19).

engaged in retaliation for filing grievances by beating him, denying him adequate medical or mental health care, and transferring him to a segregation cell without cause. The initial complaint contained numerous claims against named parties, as well as a vast number of allegations against 35 John Doe defendants. The Court narrowed the scope of the claims, allowing Plaintiff to proceed against some of the named defendants as well as 7 of the 35 John Does. The parties then engaged in an exchange of information to identify the 7 John Does. All 7 Does were identified, and Plaintiff has now moved to amend his complaint to include the identified parties, and he also moves to add an additional 34 defendants to this case related to the same original underlying conduct. (Doc. 82).

Plaintiff's Amended Complaint (Doc. 82) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Background

Upon initial review of Plaintiff's original complaint, the Court worked diligently to parse out the allegations that were most significant and the defendants whose personal actions were distinguishable from others. For example, the Court allowed Plaintiff to proceed against John Does 29-32 because he had alleged he interacted face to face with

these individuals and that they had denied him medical care. By contrast, the Court did not allow him to proceed ambiguously against John Does 16-28, individuals whom Plaintiff vaguely alleged denied him care, but for whom he did not describe discrete interactions.

Ultimately, Plaintiff was allowed to proceed on the following claims:

Claim 1: Eighth Amendment excessive force claim against Nicholas Bebout, and Jackie Stueve Jr. and Douglas Brand for the alleged November 22, 2021, beating in the West cellhouse, and against Jonathan Dye for deploying mace the same day;

Claim 2: First Amendment retaliation claim against Shana Moore, Nicholas Bebout, and Lee for making explicit comments about retaliation against Plaintiff in relation to his grievance activity, and against Nicholas Bebout for breaking Plaintiff's headphones;

Claim 3: Eighth Amendment failure to protect/intervene claim against Defendants Nicholas Bebout, Stueve, Brand, Presswood and Griffin for failing to stop the physical attacks or mace incident on November 22, 2021;

Claim 4: Eighth Amendment denial of medical care claim against Lt. Bebout, Stueve, Brand, Dye, Presswood, Griffin and Cox for refusing Plaintiff's requests for medical/mental health care after the physical attacks; and against Rachel Alfaro, Quiandra Morrison, Sheri Buettner, and Tera Wilkes who allegedly explicitly refused care at the healthcare unit after Plaintiff was maced and attempted suicide;

Claim 6: First Amendment retaliatory transfer claim against Lt. Bebout, Shana Moore, Defendant Quick and Defendant Wills for influencing or approving Plaintiff's transfer to another prison facility;

Claim 7: Eighth Amendment cruel and unusual punishment claim against Defendant Jonathan Dye for verbal harassment about Plaintiff's desire to commit suicide;

  **Claim 8:**  State law assault and battery claim against Shana Moore, Nicholas Bebout, Defendant Lee, and Brand, Stueve, and Dye;

By contrast, the Court dismissed claims against Defendants Lt. Webb, C/O Frazier, Siddiqui, K. Allsup, Madole, Director Jeffreys, and John Does 1, 4-14, 16-28, and 33-35. (Doc. 8).

## Motion to Amend (Doc. 82)

  Plaintiff moved to amend (Doc. 82) both to include the names of the 7 John Does that he identified, as well as to add other defendants he was able to identify who were involved in the same course of conduct.  Though this case has been around for more than a year, the Court is mindful that a significant amount of time passed during which the parties actively collaborated on the John Doe identification process, which proved fruitful and required little overall Court involvement.  Plaintiff's amended complaint may be arriving more than a year after this case began but it has been filed just a few months after the parties finished exchanging information about the Does.  Leave to amend should be granted freely, and the Defendants have not opposed Plaintiff's Motion.  The amendment is burdensome in that it is voluminous and adds numerous parties, but it allows Plaintiff to make modifications consistent with information he has gathered in an early exchange with the Defendants.  Given that the case is still just beyond the initial pleading stage and some defendants have just recently filed answers, the Court finds it appropriate to grant Plaintiff's Motion to Amend (Doc. 82).

**The Amended Complaint (Doc. 82-1 through 82-4)**

Plaintiff alleges that on November 22, 2021, after being escorted to the West cell house, Defendant Charles Hoskins was present near a temporary holding shower when he asked to speak to Defendant Nicholas Bebout about his medical needs in relation to his new housing placement.  Hoskins was part of a group that quickly became aggressive and hostile.  He claims that Hoskins saw Bebout strike him in the face, but he failed to intervene. (Doc. 82 -1 at 8-9, 11).  As Brand and Stueve were escorting Plaintiff away from the temporary holding area, they were physically battering Plaintiff.

Plaintiff claimed in his initial complaint that during this battering he spotted Defendant Presswood on a catwalk and called out to him for help because he knew Presswood.  He now adds in his amended complaint that Defendants Dunbar, Mills and Erlenmeyer were all on the catwalk with Presswood and could also see the scuffle taking place but failed to intervene.  (Doc. 82-1 at 10).

As the beating progressed, Plaintiff alleges that Brand and Stueve briefly stopped on a landing where he was able to spot Defendants Feldman, Buskirk, Hempen, Price, Brown, Lawson, Crumbacher, and Powell standing by.  He faults these eight for failing to intervene at that time.  (Doc. 82-1 at 10).  He also faults them for being "gatekeepers" who prevented him from accessing medical care despite knowing that he had sustained or was sustaining serious injuries at the time they saw him.  (Doc. 82-1 at 15).

Plaintiff ambiguously faults Defendants Spytek, Choate, McDonald, Elsner, Ashbaugh, Young, Tilden and M. Edwards for denying him access to medical care as "gatekeepers" aware of his injuries, but he does not state where or when he interacted

with these individuals in relation to this assertion. (Doc. 82-1 at 16). He also faults them for denying him mental health care prior to his suicide attempt. He claims that they specifically denied him a crisis team when one was requested prior to his suicide attempt around 8:00pm on November 22, 2021. (Doc. 82-1 at 18). He makes these latter claims in association with those he is already pursuing against Defendants Griffin and Cox. In this context, it appears he alleges he interacted with these new defendants at some point while in a cell after the beating but before his suicide attempt.

Following the suicide attempt, Plaintiff was taken to the healthcare unit around 8:15pm on November 22, 2021. He alleges that during this visit newly added Defendants Lloyd, Guetersleh, Bowling, Garden, and Schuhardt were all present. He faults them for denying him mental health care. (Doc. 82-1 at 18-20). He also faults Defendants Hudson, Bennet, Hepp, and Alms for being "gatekeepers" who prevented him from securing needed mental health help after his suicide attempt but prior to his placement in segregation. (Doc. 82-1 at 19). He specifically claims that Hudson, Bennet and Hepp showed deliberate indifference by allowing him to be placed in a segregation cell instead of a crisis cell after his suicide attempt. (Doc. 82-1 at 20). And he faults Defendant Alms for deliberate indifference, "by not performing assigned duty as crisis watch officer after plaintiff's attempted suicide." (Doc. 82-1 at 20).

Additionally, related to healthcare, Plaintiff claims that Defendants M. Edwards and Keith Feldman were both informed of his need for care at different points and despite being associated with the healthcare staff, these two refused him any help or treatment. (Doc. 82-1 at 8, 11, 18). He alleges that while he was in the medical unit on

November 22, 2021, around 8:25pm, Defendant Harris confiscated his asthma pump and refused to return it, leaving him to suffer asthma attacks. (Doc. 82-1 at 17). He also faults Harris for not offering any other medical or mental health care after his suicide attempt. (Doc. 82-1 at 19). Furthermore, he alleges that in the days after the incident he had a variety of follow-up care directed by medical professionals, but Defendants Angela Craine and Kathy Ashcroft acted with deliberate indifference by either failing to schedule the care or by preventing it from being scheduled. (Doc. 82-1 at 17).

On a broader level, Plaintiff now adds Wexford Health Sources, Inc., and Dr. Ritz as defendants. (Doc. 82-1 at 20-21). He faults Wexford and Ritz for understaffing and failing to train staff, which he says meant that he did not get care when he had visible injuries, and that he did not get mental health care because there were not sufficient staff or were not staff willing to provide aid at the end of their shifts. (*Id.*).

Finally, Plaintiff faults new Defendants Hudson, Maynard, and Bennet for violating his rights to Due Process and Equal Protection by directly approving his placement in segregation without a disciplinary infraction and despite knowing that he had just attempted suicide. (Doc. 82-1 at 24-25). He also characterizes this as deliberate indifference and retaliation for complaining about incidents with the officers that had just transpired. (*Id.*).

In closing he adds additional remarks about the alleged retaliatory motives of existing Defendants Quick, Wills, Bebout and Moore. (Doc. 82-1 at 25-27).

Plaintiff seeks a variety of injunctive relief, a thorough investigation of the events he describes, and extensive monetary damages. (Doc. 82-1 at 27-44).

In support of the Amended Complaint, Plaintiff submitted approximately 150 pages of evidence. The evidence includes grievance documents, disciplinary documents, medical records, staffing records, and more. Of note, on November 22, 2021, notes from 8:15pm document that he was exposed to mace. (Doc. 82-3 at 37). Notes from 10pm the same night note that he needs to be recalled regarding his asthma. (Doc. 82-3 at 38). Notes from November 23, 2021, at 10am document a recent head injury, dizziness and headaches, low back pain, tenderness to his right flank, a slight limp in his right ankle, bruising and achiness and more. (Doc. 82-3 at 39-42). Bruising was specifically noted to Plaintiff's left shoulder, the left side of his neck, and his right temple. (Doc. 82-3 at 42).

An incident report from November 22, 2021, reflects Plaintiff's suicide attempt. Defendant Dye reported to the West cell house where he observed Plaintiff "sitting in the back of the cell on the toilet with a t-shirt tied around his neck and secured to the coat rack." (Doc. 82-4). Officers report that they made attempts to de-escalate, but Plaintiff "slid off the side of the toilet in an attempt to cause self-harm." (*Id.*). The incident report reflects that Plaintiff was assessed in the healthcare unit by medical and mental health staff, and he was "cleared" to be escorted to the North 2 cell house. (*Id.*).

Plaintiff attached a lengthy e-mail exchange between a member of the Administrative Review Board and Menard staff about the alleged excessive force incident. (Doc. 82-4 at 5-13). The exchange suggests that there was an internal investigation at Menard, which was completed in May of 2023. (Doc. 82-4 at 13).

Based on the allegations in the Amended Complaint, the Court will modify the existing claims, and will add additional claims as follows:

Claim 1: Eighth Amendment excessive force claim against Nicholas Bebout, and Jackie Stueve Jr. and Douglas Brand for the alleged November 22, 2021, beating in the West cellhouse, and against Jonathan Dye for deploying mace the same day;

Claim 2: First Amendment retaliation claim against Shana Moore, Nicholas Bebout, Lee for making explicit comments about retaliation against Plaintiff in relation to his grievance activity, and against Nicholas Bebout for breaking Plaintiff's headphones;

Claim 3: Eighth Amendment failure to protect/intervene claim against Defendants Nicholas Bebout, Jackie Stueve Jr., Douglas Brand, Presswood, Griffin, <u>Charles Hoskins, Colman Dunbar, John Mills, Troy Erlenmeyer, Charles Buskirk, Marc Hempen, Robert Price, Trenton Brawn, David Lawson, Michael Crumbacher, and John Powell</u>, for failing to stop the physical attacks or mace incident on November 22, 2021;

Claim 4: Eighth Amendment denial of medical care claim against Nicholas Bebout, Jackie Stueve Jr., Douglas Brand, Jonathan Dye, Presswood, Griffin, Cox, <u>Cory Spytek, Aaron Choate, Geddy McDonald, William Elsner, Darren Ashbaugh, Eric Young, Van Tilden</u>, <u>Keith Feldman and Manning Edwards</u>, for refusing Plaintiff's requests for medical/mental health care after the physical attacks; and against Rachel Alfaro, Quiandra Morrison, Sheri Buettner, Tera Wilkes, <u>Austin Harris, James Lloyd, Ronald Guetersleh, Marlene Bowling, John Garden, James Schuhardt, Angela Craine, and Kathy Ashcroft</u> who allegedly explicitly refused care at the healthcare unit after Plaintiff was maced and attempted suicide;

Claim 6: First Amendment retaliatory transfer claim against Nicholas Bebout, Shana Moore, Defendant Quick and Defendant Wills for influencing or approving Plaintiff's transfer to another prison facility;

Claim 7: Eighth Amendment cruel and unusual punishment claim against Defendant Jonathan Dye for verbal harassment about Plaintiff's desire to commit suicide;

> Claim 8:   State law assault and battery claim against Shana Moore, Nicholas Bebout, Defendant Lee, and Jackie Stueve Jr., Douglas Brand, and Jonathan Dye;
>
> Claim 9:   First Amendment retaliation, Eighth Amendment deliberate indifference, or Fourteenth Amendment Due Process or Equal Protection claim against Defendants Maynard Hudson, Andrew Bennet, or Joel Hepp for allowing/directing Plaintiff to be placed in segregation instead of crisis watch after his suicide attempt and absent a disciplinary ticket;
>
> Claim 10:  *Monell* or Eighth Amendment deliberate indifference claim against Defendants Wexford and Dr. Ritz for understaffing or inadequate training that led to deficient care for Plaintiff.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Twombly*, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

**Preliminary Dismissals**

Plaintiff faults Defendants Buskirk, Hempen, Price, Brawn, Lawson, Crumbacher, Powell, Dunbar, Mills, and Erlenmeyer for being present either on a catwalk or a landing during the incident of excessive for by Brand and Stueve. He further alleges that because these individuals could see the physical altercation, they then acted as "gatekeepers" who prevented him from getting adequate medical care. The Court finds this aspect of Plaintiff's allegations too speculative. At most, these defendants may have seen Plaintiff moved through an area of the prison in a matter of seconds, with just enough time to

perhaps consider if they should step in. The Court will read Plaintiff's complaint liberally and will allow him to further pursue the question of if these individuals had enough time to step in, but it will not take it a step further by also assuming they should have in a split second recognized he was seriously injured, thus springing to action to secure medical care.

Plaintiff faults new defendant Tyson Alms for acting with deliberate indifference by failing to do his job as a crisis watch officer after Plaintiff's suicide attempt, but this allegation is too vague. It does not indicate if Plaintiff and Alms ever personally interacted, or if perhaps Plaintiff just saw Alms' name on a roster and now added him to this lawsuit because he believes he *should* have been placed in the crisis watch area where Alms was assigned on the day in question. Given the lack of indication that Alms and Plaintiff ever interacted, the Court does not find sufficient personal involvement of Alms, and he will be dismissed without prejudice.

## Analysis

### Claims 1-2

These claims remain unchanged from the original.

### Claim 3

The Court previously allowed Plaintiff to proceed on a theory of failure to intervene against Defendants Bebout, Stueve, Brand, Presswood and Griffin. Though it noted the allegations were thin, particularly as to Presswood and Griffin. To demonstrate a failure to intervene, an inmate must demonstrate that a prison official knew about a constitutional violation and had a realistic opportunity to prevent it. *Gill*

*v. Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).  Plaintiff now seeks to add two groups of Defendants to this theory—those who stood on the catwalk with Presswood and those who stood on a landing and observed either the beating or a short break in the beating. He also seeks to add Hoskins, a defendant who allegedly stood by at the very beginning of the incident when Bebout struck him.  The Court finds that the addition of this large group of defendants strains the bounds of plausible inferences in Plaintiff's favor.  In fact, adding so many defendants to this case who appear to have played such a small role, is likely to dilute Plaintiff's chances of reaching the heart of his most serious allegations, because the sheer size of the lawsuit is becoming unwieldly.

Nevertheless, the allegations in this case taken at face value are serious, and Plaintiff is the master of his own pleading.  If he wishes to add 11 defendants who might have seen a brief second of the events on November 22, 2021, it is his choice to do so.  The Court cannot, on the face of the bare pleadings, readily determine if any of these folks had enough involvement to realistically step in.  Reading the amended complaint broadly, the Court will allow Plaintiff to add Defendants Charles Hoskins, Charles Buskirk, Marc Hempen, Robert Price, Trenton Brawn, David Lawson, Michael Crumbacher, John Powell, Colman Dunbar, John Mills, and Troy Erlenmeyer to the list of Defendants for Claim 3.

**Claim 4**

As with Claim 3, Plaintiff seeks to add a large group of individuals to Claim 4, whom he alleges were present at times when he made his needs for medical and mental health care known.  He also has a few standalone defendants whom he alleges took

discrete harmful acts (Feldman, Harris, Edwards, Craine, Ashcroft). In the exhibits attached to the Complaint, Plaintiff has added medical documents from November 23, 2021, that now confirm the existence of various visible injuries including a limp with his right foot/ankle, reports of a head injury and dizziness, and bruising.

On the information presented, it is nearly impossible for the Court to discern who may have played an active role, versus who may have just been on duty that day without interacting with Plaintiff. Accordingly, the Court will now allow Plaintiff to add Defendants: Feldman, Spytek, Choate, McDonald, Elsner, Ashbaugh, Young, Tilden, Harris, Lloyd, Guetersleh, Bowling, Garden, Schuhardt, Edwards, Craine and Ashcroft to Claim 4 on the notion that they may have exhibited deliberate indifference to his pleas for care. Or, in the case of Feldman, Harris or Edwards, they may have taken a more direct role by personally denying care or taking his inhaler. Again, the addition of numerous defendants does not necessarily strengthen the claim, but reading the pleading broadly it is truly impossible to discern the varying degrees of responsibility these individuals may possess.

**Claims 6, 7, 8**

These claims remain unchanged.

**Claim 9**

Plaintiff faults newly added defendants Hudson, Bennet and Hepp for directly approving his placement in segregation instead of crisis watch, despite knowing he did not have a disciplinary ticket and had just attempted suicide. He characterizes their

actions as retaliatory for him complaining about the excessive force incident or for his suicide attempt, as well as a violation of his Due Process and Equal Protection rights.

To make a *prima facie* showing of retaliation, plaintiff must allege: (1) he engaged in a protected activity; (2) he suffered a deprivation likely to deter him from engaging in the protected activity; and, (3) his protected activity was the motivating factor in the defendant's decision to retaliate. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). Here, Plaintiff seems to be alleging that Defendants Hudson, Bennet and Hepp either acted out of retaliation for his suicide attempt, or because he was complaining about the excessive force that had taken place shortly before his suicide attempt. Complaints about violence at the hands of prison officials might be considered protected speech, but a suicide attempt itself is not protected speech. *See e.g., Jones v. Wexford Health Sources, Inc.*, 2023 WL 6276046 at * 9 (S.D. Ill. Sept. 26, 2023) (an inmate's suicide attempt is not protected speech).

Even assuming that Plaintiff may have participated in protected speech by complaining or grieving the actions of the officials who he alleges assaulted him, he still does not allege enough to show that any such speech motivated or caused Hudson, Bennet and Hepp to place him in segregation as opposed to crisis watch or any other location. Additionally, the incident report that he submitted with his complaint concludes that he was "cleared" by mental and medical health professionals to be housed in North 2, which weighs against the notion that Hudson, Bennet, and Hepp might have thought he needed crisis placement and instead decided to retaliate by placing him in segregation.

As to Plaintiff's allegation that his due process rights were violated, the Court already explained in the initial review of his complaint that long-term segregation involving significantly harsher conditions can trigger due process protections, but inmates do not have a protected liberty interest in avoiding short-term transfer to segregation, *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008), or in avoiding restrictions "that do not substantially worsen the conditions of confinement." *White v. Scott*, 849 F. App'x 606, 608 (7th Cir. 2021).  Here, Plaintiff's latest allegations about the duration or conditions of his placement in segregation do not invoke a liberty interest, so he cannot maintain this Due Process claim.

Finally, he also claims that his placement in segregation violated Equal Protection, but the claim is insufficiently pled because he does not identify membership in a protected class that led to his disparate treatment, nor does he allege he was intentionally treated differently for no rational reason.  *See e.g., Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) (a plaintiff must allege membership in a protected class, differential treatment to those unprotected, and that the differential treatment was motivated by a discriminatory purpose); *Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019) (defining a class-of-one claim).  Plaintiff's allegations about Equal Protection are simply too vague to proceed.

As such, Claim 9 may not proceed against Hudson, Bennet or Hepp, and these defendants will be dismissed without prejudice.

**Claim 10**

In the Amended Complaint, Plaintiff now endeavors to add claims against Wexford Health Sources, Inc., and Dr. Ritz, for the lack of medical and mental health care he received. He specifically argues staff are not properly trained and there are not enough staff on hand. Plaintiff does not describe Dr. Ritz's personal role, and instead just lumps him in with Wexford. Section 1983 liability relies largely on personal responsibility, so simply listing Ritz is insufficient. He also has not demonstrated Ritz was a policymaker for Wexford or someone with policymaking authority, so it does not appear Ritz could be held liable under any theory associating him with Wexford.

Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). *Monell* claims are difficult to prove, and a key component of a *Monell* claim is a causal link between the identified policy and the injury sustained. A plaintiff must show that "Wexford itself directly caused the constitutional violation." *Dean*, 18 F.4th at 239. "The rigorous causation standard requires a direct causal link between the challenged

municipal action and the violation of the plaintiff's constitutional rights." *Id.* at 236 (internal citations omitted).

Plaintiff faults Wexford and Dr. Ritz for understaffing, complaining no one was there overnight the night of November 22nd into November 23, 2021, to see to his mental health needs after his suicide watch. But in the same paragraph, he also states that he saw Defendants Buettner, Wilks, Garden, and Schuhardt that night before they were off duty and they simply refused to render mental health care or to have him placed on crisis watch. He complains that part of the problem is that there are vacant positions. Ultimately, this collection of allegations does not plausibly suggest that the response he got from the mental and medical health staff on the night of November 22, 2021, was a result of a policy, practice or custom of Wexford, as opposed to the negligence or misdeeds of individual employees such as Buettner, Wilkes, or others. There is no *respondeat superior* liability by a corporation like Wexford for the discrete misdeeds of their employees. Here, the Court does not find that Plaintiff has plausibly alleged that Wexford should be held liable for the situation he faced.

Likewise, he alleges that Wexford or Dr. Ritz failed to train Alfaro, Morrison, Bowling and Edwards, which led to him not receiving any care for his visible physical injuries. Again, this sounds like an attempt to hold Wexford responsible via *respondeat superior* for individual misdeeds of employees, and this is not a viable strategy.

On the facts alleged, the Court concludes that Plaintiff has not pled a sufficient claim against Wexford or Dr. Ritz, so Claim 10 is dismissed without prejudice.

Finally, the Court notes that Plaintiff expressly mentions a litany of state law theories in the opening paragraph of his amended complaint, but he does not closely discuss these theories throughout the pleading.  The Court finds that the shotgun listing of these theories is inadequate, so it will not add any additional state law claims.

## Disposition

**IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Amend (Doc. 82) is **GRANTED**, and the Clerk of Court is **DIRECTED** to docket his Amended Complaint (Docs. 82-1 through 82-4) as a freestanding Amended Complaint on the docket sheet. **Claim 3** of the Amended Complaint (Doc. 82-1) survives initial screening as described above against Defendants Hoskins, Dunbar, Mills, Erlenmeyer, Buskirk, Hempen, Price, Brawn, Lawson, Crumbacher, and Powell; and **Claim 4** survives against Defendants Spytek, Choate, McDonald, Elsner, Ashbaugh, Young, Tilden, Feldman, Edwards, Harris, Lloyd, Guetersleh, Bowling, Garden, Schuhardt, Craine, and Ashcroft.

By contrast, the Court finds that **Claims 9 and 10** are insufficient as pled, and that Plaintiff has failed to state any sufficient claim against Defendants Hudson, Bennet, Hepp, Wexford Health Sources, Inc., Dr. Ritz, or Alms.  The Clerk is **DIRECTED** to **TERMINATE** Defendants Hudson, Bennet, Hepp, Wexford, Ritz, and Alms.

The Clerk of Court is **DIRECTED** to prepare for Defendants Hoskins, Dunbar, Mills, Erlenmeyer, Buskirk, Hempen, Price, Brawn, Lawson, Crumbacher, Powell, Spytek, Choate, McDonald, Elsner, Ashbaugh, Young, Tilden, Feldman, Edwards, Harris, Lloyd, Guetersleh, Bowling, Garden, Schuhardt, Craine, and Ashcroft: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of

Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 82-1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Dated: August 2, 2024

_____
DAVID W. DUGAN
United States District Judge