IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH SHARPLES, K92574, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 23-cv-997-DWD |
| vs. | ) ) |
| NICHOLAS BEBOUT, et al., | ) ) |
| Defendants.[1] | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Kenneth Sharples, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Western Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while housed at Menard Correctional Center (Menard). Plaintiff claims that the defendants engaged in retaliation for filing grievances by beating him, denying him adequate medical or mental health care, and transferring him to a segregation cell without cause. The matter is currently before the Court on three motions for summary judgment concerning Plaintiff's exhaustion of administrative remedies filed by Defendants: Sherri Buettner, Tera Wilkes, Quiandraaneice Morrison, John Gordon[2], James Schuhardt (Doc. 138); Marolene Bowling (Doc. 173); and Rachel Alfaro (Doc. 189). Plaintiff has responded

---

[1] The Clerk of Court is **DIRECTED** to replace Defendant Sgt. Bebout with Shana Moore (Doc. 23 at 1, n.1), Lt. Bebout with Nicholas Bebout (Doc. 19), C/O Lee with Daniel Lee (Doc. 19), C/O Griffen with Brandon Griffin (Doc. 19), C/O Presswood with Robert Presswood (Doc. 19), C/O Cox with Curtis Cox (Doc. 19), and Counselor Quick with Sara Quick (Doc. 19).

[2] On the docket sheet, Gordon is listed as "James Garden," but in the motion counsel identifies his name as "John Gordon." The Clerk of Court shall **UPDATE** the docket sheet to replace "Garden" with Gordon.

(Docs. 163, 187, 192). For reasons explained in this Order, the motions must be denied on paper because there is a material dispute about a missing grievance, but the defendants will have an opportunity to seek a *Pavey* hearing.

## Background

Plaintiff's claims all pertain to an alleged incident of excessive force at Menard. He claims the incident arose as a form of retaliation for prior grievances, and that after the incident he struggled to secure medical or mental health care. Initially, he designated many John/Jane Doe defendants, but via early discovery and amended pleadings, he was able to identify numerous individuals by name.

Ultimately, Plaintiff was allowed to proceed on the following claims:

> **Claim 1:** **Eighth Amendment excessive force claim against Nicholas Bebout, and Jackie Stueve Jr. and Douglas Brand for the alleged November 22, 2021, beating in the West cellhouse, and against Jonathan Dye for deploying mace the same day;**
>
> **Claim 2:** **First Amendment retaliation claim against Shana Moore, Nicholas Bebout, Lee for making explicit comments about retaliation against Plaintiff in relation to his grievance activity, and against Nicholas Bebout for breaking Plaintiff's headphones;**
>
> **Claim 3:** **Eighth Amendment failure to protect/intervene claim against Defendants Nicholas Bebout, Jackie Stueve Jr., Douglas Brand, Presswood, Griffin, Charles Hoskins, Colman Dunbar, John Mills, Troy Erlenmeyer, Charles Buskirk, Marc Hempen, Robert Price, Trenton Brawn, David Lawson, Michael Crumbacher, and John Powell, for failing to stop the physical attacks or mace incident on November 22, 2021;**
>
> **Claim 4:** **Eighth Amendment denial of medical care claim against Nicholas Bebout, Jackie Stueve Jr., Douglas Brand, Jonathan Dye, Presswood, Griffin, Cox, Cory Spytek, Aaron Choate, Geddy McDonald, William Elsner, Darren**

> Ashbaugh, Eric Young, Van Tilden, Keith Feldman and Manning Edwards, for refusing Plaintiff's requests for medical/mental health care after the physical attacks; and against Rachel Alfaro, Quiandra Morrison, Sheri Buettner, Tera Wilkes, Austin Harris, James Lloyd, Ronald Guetersleh, Marlene Bowling, John Garden, James Schuhardt, Angela Craine, and Kathy Ashcroft who allegedly explicitly refused care at the healthcare unit after Plaintiff was maced and attempted suicide;
>
> Claim 6:   First Amendment retaliatory transfer claim against Nicholas Bebout, Shana Moore, Defendant Quick and Defendant Wills for influencing or approving Plaintiff's transfer to another prison facility;
>
> Claim 7:   Eighth Amendment cruel and unusual punishment claim against Defendant Jonathan Dye for verbal harassment about Plaintiff's desire to commit suicide;
>
> Claim 8:   State law assault and battery claim against Shana Moore, Nicholas Bebout, Defendant Lee, and Jackie Stueve Jr., Douglas Brand, and Jonathan Dye;

(Doc. 98 at 18).

The present motions for summary judgment concern Defendants Morrison, Buettner, Wilkes, Gordon, Schuhardt, Bowling, and Alfaro. These individuals are named solely in Claim 4, the claim concerning the adequacy of healthcare and mental healthcare. Specifically, Plaintiff alleged that on the night of the excessive force incident, he attempted suicide, but did not receive mental health services. He alleged in the Complaint that Morrison was a nurse on duty the night of the incident and she was present in the healthcare unit when he was taken to be decontaminated from pepper spray after his suicide attempt, but she did not offer any sort of treatment. (Doc. 103 at ¶¶ 16-17). He similarly faults Bowling and Alfaro for being present during the 8:15p.m. examination in the healthcare unit when he was decontaminated from pepper spray.

(Doc. 103 at ¶¶ 88-89, 91). As for Buettner, Wilkes, Gordon, and Schuhardt, he claims these individuals are all mental health staff who were on duty the day of these incidents, but instead of offering him care they all signed off duty shortly before he was examined in the healthcare unit. (Doc. 103 at ¶¶ 99-102). These are the sole factual allegations in the complaint against these individuals, and they are all associated with Claim 4.

The Defendants argue that Plaintiff exhausted one grievance about the excessive force that is not relevant to them, and that he transmitted a second grievance to the ARB that did not mention their conduct with any specificity and was not properly exhausted. Plaintiff counters that the grievance process was unavailable to him, and that he actually sent a third grievance to the ARB about his medical and mental health issues specific to these defendants, but it came up missing and never got a response.

## Facts

The records submitted by the parties do not demonstrate that any grievances were logged directly at Menard. Instead, the parties agree the evidence shows that two grievances were transmitted to the Administrative Review Board in December of 2021. Plaintiff submitted a request to his counselor dated December 6, 2021. (Doc. 163 at 40). In the request, he inquired about the status of three grievances. A grievance submitted November 25, 2021, on staff conduct; a grievance submitted November 26, 2021, on staff conduct and medical treatment; and, a November 29, 2021, grievance on staff conduct, medical treatment, etc.. (Doc. 163 at 40). Plaintiff got a response stamped December 8, 2021, wherein the counselor indicated that the last grievance received from him was received on November 19, 2021, and concerned his pain medication and ankle. (Doc. 163

at 40). Plaintiff also submitted a January 15, 2022, letter that he transmitted to the ARB concerning the three grievances he attempted to re-file at the prison and to send directly to the ARB. (Doc. 163 at 38-39). In the letter, he described his attempts at the prison to ensure the grievances were filed and logged to no avail. He also included a December 8, 2021, letter that mentioned similar issues. (Doc. 163 at 35-36).

The first grievance that Plaintiff allegedly resubmitted was dated December 9, 2021, and the second was dated December 12, 2021. In the December 9, 2021, grievance, Plaintiff alleged that on the day of the incident he was in the process of being assigned to a new cell. (Doc. 139-1 at 42-43). At the cellhouse, staff tried to direct him to an upper deck, but he informed them he needed a low gallery/low bunk for injuries. A verbal disagreement followed, and Plaintiff sat on the floor in front of a shower area. He alleges that at that point, he was snatched off of the ground and a physical assault ensued. (Doc. 139-1 at 43). The grievance goes on at length about the extent of the physical assault. The sole mention of healthcare is Plaintiff's allegation that when he was directed to walk after the beating, he told a guard he could not walk and needed a med tech, and he was told "good luck with that." (Doc. 139-1 at 43). In the request for relief, Plaintiff stated that he needed a medical evaluation. (Doc. 139-1 at 42). He alleges he originally attempted to file the grievance on November 26, 2021, but when a counselor informed him on December 8, 2021, that no emergency grievances had been received, he redrafted it and resubmitted it at the ARB and to the Warden. (Doc. 139-1 at 43).

The second December grievance was dated December 12, 2021. (Doc. 139-1 at 44-48). In the grievance Plaintiff alleged that all afternoon after the beating he asked gallery

officers for a med tech. An officer brought him his inhaler and pain medication, but a med tech did not come around for medication rounds until evening. (Doc. 139-1 at 45). Plaintiff alleges that when the male med tech came by, he explained that he had been beaten and that if he did not get medical help he would engage in self-harm. The med tech left without further assistance, and staff then began to harass Plaintiff for having relayed his concerns. Plaintiff attempted to inform staff that he wanted to declare a crisis, but got no response, so he removed his t-shirt and attempted to hang himself. Plaintiff was then maced and removed from the cell. He claims he was rinsed off in the healthcare unit for 5-7 minutes but received no other care. (Doc. 139-1 at 45). After being placed back in a cell, Plaintiff informed an officer and major that he had not received medical or mental health treatment despite all that had transpired. He stated that a mental health worker briefly spoke to him, and he asked her for a med tech. (Doc. 139-1 at 46). The officer then said he would locate a med tech. Plaintiff was briefly examined by a med tech, whom he alleges documented the injuries she could while he was cuffed to a stool. The med tech also gave him ibuprofen and sought a refill of his inhaler. He alleges that the next day (November 24, 2021), the same mental health worker checked on him, and the same med tech brought his inhaler. He was told he would be seen on Friday, or the following Monday due to a holiday. (Doc. 139-1 at 47). He alleges that Defendant Griffin was the main gatekeeper to the care he needed, and it took numerous requests before he was eventually taken to be seen by medical. He complains his serious mental health behavior was not properly addressed by staff. He indicated he needed immediate mental health care. At the end of the grievance, Plaintiff explains he first attempted to submit it

November 29, 2021, but when he learned it had not been received, he resubmitted it as an emergency to the ARB and Warden. (Doc. 139-1 at 47).

Documentation about the December 9 and December 12 grievances was received by the ARB on December 16, 2021, and on December 22, 2021, ARB employee Madole contacted Menard about having received two grievances about excessive force. (Doc. 139-1 at 40-41). Email exchanges about the grievances continued from December of 2021, until May 23, 2023, at which time the prison informed Madole that an internal investigation concluded the allegations of excessive force were unsubstantiated. (Doc. 139-1 at 33). On May 24, 2023, Madole prepared a response that explicitly labeled in association with the grievance dated December 9, 2021, but in fact substantively discussed allegations from BOTH the December 9 and December 12, 2021, grievances. (Doc. 139-1 at 32).

Plaintiff states in an affidavit in support of his response to summary judgment that in addition to the December 9 and December 12, 2021, grievances, he had a third grievance that was "completely lost" from his file. (Doc. 163 at 11). He claims that the third grievance dealt with how he was never seen by mental health after his suicide attempt, how he was denied mental health care at the medical unit around 8:15pm on November 22, 2021, and how he was further denied mental health attention when he was "stripped out." (Doc. 163 at 11). He claims he tried numerous times to exhaust all remedies for these three grievances, but exhaustion was made unavailable. He attests that he was seen once on November 23 by "Ms. B" and a second time by the same

provider November 24, 2021. (Doc. 163 at 12). He further claims that two mental health assessments have been entirely "lost" from his files. (Doc. 163 at 12).

Plaintiff attached medical records showing that on November 22, 2021, at 8:15pm, he was assessed after being exposed to mace. (Doc. 163 at 48). Additionally, on November 23, 2021, he was assessed for various injuries, including a self-reported head injury and visible bruising on his neck, temple, shoulder, and ankle. (Doc. 163 at 52).

## Analysis

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the

grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The Illinois Administrative Code provides that the grievance officer shall "when reasonably feasible under the circumstances" make recommendations to the prison's Chief Administrative Officer (CAO) on a grievance within two months of receipt. 20 Ill. Admin. Code § 504.830.

While there is no firm deadline for the prison to handle grievances, courts have suggested that if an inmate has no clue if or when a response might come, then the process may become obscure or unavailable. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020) (finding that an inmate who never got a response to a standard grievance, and who got two unhelpful responses from the ARB that did not indicate if anyone was investigating, had run into an administrative process that was unavailable to him); *compare with Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (holding that the passage of the 60-day aspirational timeline without a response did not automatically open the avenue for a

lawsuit if the prison was still investigating a grievance). In *Reid*, an inmate alleged an assault by a prison staff member and simultaneously filed an emergency and standard grievance. The Warden deemed the emergency grievance a non-emergency. The prison responded to the standard grievance with an indication the matter had been referred for internal investigation, but it never provided a formal ruling on the grievance. Plaintiff tried to go to the ARB, but they responded that he needed a counselor's rejection and grievance officer/CAO rejection, without checking the box to invite the submission of those materials. Plaintiff then tried to inquire via emergency grievance about the non-return of his standard grievance, but the CAO denied emergency status, and the ARB again rejected the appeal for lack of underlying documents with no indication of what Plaintiff could do to return for a valid merits consideration of his appeal. Against this backdrop, the Seventh Circuit found that the process was obfuscated, that Plaintiff's standard grievance never got a response, that he had no reason to believe any grievances were being investigated further, and that the process was thus unavailable.

The "failure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) citing *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022); *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). "In short, if there are contested facts as to whether a prison grievance process was available (keeping in mind that the burden of proof is on the defendants to show a lack of exhaustion), summary

judgment is not appropriate and this gateway factual determination must be made in a *Pavey* hearing." Smallwood, 59 F.4th at 315.

Plaintiff contends, and the Defendants do not dispute, that he tried two times to submit three grievances at the prison level, but even after following up with a counselor, he never successfully got the grievances acknowledged at the prison level. On his second attempt to file the grievances, he tried to assure success that his grievances would be received by mailing copies of them to the ARB in December of 2021. The ARB received just *two* grievances and emailed the prison about them, though there is no indication that they ever informed Plaintiff the grievances were received or that they were looking into the matter.

The December 9, 2021, grievance focuses almost solely on the physical assault itself, with one fleeting mention that Plaintiff asked a single guard for medical attention and was told, "good luck with that." The Defendants contend that this cannot exhaust claims against them because the grievance only mentions correctional officers and says nothing specific about deficient medical or mental health care. Additionally, it does not mention any of the defendants by name.

As to the December 12, 2021, grievance, Defendants contend that it was also sent to the ARB but did NOT get a final ruling by the ARB. This argument is unavailing. The ARB emails indicate that they clearly received TWO grievances from Plaintiff. When the ARB finally responded to Plaintiff on May 24, 2023, they stated the response form only referenced the December 9, 2021, grievance, but the facts discussed on the form show that they were actually responding to both the December 9 and December 12th grievances.

This can be deduced by a close reading of the ARB's return form and the two grievances. Only the December 12 grievance mentions Officer Griffin (Doc. 163 at 28-31), and the ARB's May 24 response also acknowledges that plaintiff "claims C/O Griffin refused to get grievant medical attention." Thus, the Court is satisfied that the ARB's May 23, 2024, response was a response to both the December 9 and December 12, 2021, grievances.

This still leaves the issue of if the December 12 grievance is sufficient to describe the conduct of the Defendants. Defendants Buttner, Wilkes, Morrison, Gordon and Schuhardt argue that the grievance neither mentions them, nor makes any mention of mental health issues. (Doc. 139). Defendant Bowling argues the December 12 grievance did not mention her and was not properly resolved by the ARB. (Doc. 174). Defendant Alfaro argues that the December 12 grievance did not sufficiently identify her, or even if it did, it simply stated that the med tech in question provided the care requested. (Doc. 190).

Plaintiff clearly and unequivocally stated in the grievance that he needed mental health care following his suicide attempt. He explains he was seen just briefly two times in the two days after the incident but received no other mental health treatment. He explains that he was experiencing psychological trauma, serious depression, and suicidal thoughts. It is hard to imagine what more he could have said if he was entirely unable to get care. However, this still leaves the questions of if Plaintiff adequately complained about the mental health worker he saw on November 23 or 24 of 2021, or if his grievance adequately identified this person. It also leaves the question of if Plaintiff adequately complained about any medical provider, given that he describes he was briefly seen twice

and provided some items he needed. Ultimately, Plaintiff does not argue that this grievance was meant to exhaust his claims against mental or medical health staff, so the Court will not assess the possibility that this grievance exhausted a claim against any of the defendants any further.

Instead, Plaintiff argues that he described the conduct of medical and mental health staff in a third grievance that has been entirely lost. He alleges via affidavit that he filed three grievances at the prison in November of 2021. When he inquired about the status of the grievances on December 8, 2021, he was informed none of them had been received. With this knowledge, he alleges he prepared duplicates of all three and re-transmitted them to the Warden and the ARB. He claims that the Warden never responded to any of the three, and the ARB only responded to two of the three, rendering the grievance process unavailable for the third. At this stage, these assertions are sufficient to create a genuine issue of fact about the availability of the grievance process. The Court cannot resolve the issue of availability on paper.

It is worth noting, the Supreme Court recently issued the *Perttu v. Richards* decision wherein they discussed whether an exhaustion dispute can be resolved by the judge, or if it must be reserved for a jury. 145 S.Ct. 1793 (2025). In *Perttu*, the inmate alleged that a defendant sexually harassed or assaulted him, and that the same defendant tore up his grievances about the issues as retaliation and threatened him about lodging further grievances. The *Perttu* Court found that the inmate's arguments concerning exhaustion, and his substantive retaliation claim both relied on a core nucleus of facts, and thus it was improper for a judge to make findings on the exhaustion issue. The present case has some

similarities to *Perttu*, but Plaintiff does not have any retaliation or foul play claims in this case specific to his ability to file the three grievances in late November or early December. Additionally, Plaintiff does not allege that the Defendants involved in these motions for summary judgment had any role in his ability to access the grievance process. It is also not apparent that resolving the present exhaustion dispute would have any bearing whatsoever on the merits of the Eighth Amendment deliberate indifference claim against these Defendants moving for summary judgment, or that any facts established would have any bearing on claims against other Defendants. *See e.g.*, *Hill v. Tisch*, 2025 WL 2004462 (E.D.N.Y. July 17, 2025) (finding no intertwinement where an inmate did not identify any common issues between his ability to file grievances about non-administrative segregation and the merits of his underlying non-administrative segregation claims); *Marsh v. Reckert*, 2025 WL 1928608 at * 3 (E.D. Mo. July 14, 2025) (finding that an inmate's ability to exhaust a grievance could be determined by the Court entirely separate of the facts about excessive force by the sole remaining defendant). As such, the Court finds that this case does not implicate *Perttu*. If the defendants wish to pursue this affirmative defense at a hearing, the factual disputes can be resolved by the Court without implicating *Perttu*.

## Disposition

**IT IS HEREBY ORDERED THAT** Defendants' Motions for Summary Judgment (Docs. 138, 173, 189) are **DENIED** because there are genuine disputes of material fact about the issue of exhaustion. <u>If Defendants wish to pursue this affirmative defense further, they shall have 14 days to request a *Pavey* hearing.</u>

Defendants' Motion for an Extension of Time to Answer (Doc. 144) is **GRANTED** instanter because the answer has been filed (Doc. 178).  Plaintiff's Motion to Time Bar Bowling's Motion for Summary Judgment (Doc. 177) is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 28, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

This Order is an initial decision that you have presented enough evidence to refute the defendant(s) arguments about the exhaustion of administrative remedies for your claims in this lawsuit.  The defendant(s) now have the choice to withdraw their exhaustion argument, or to ask for a hearing to give more evidence about this issue.  If the defendants withdraw the defense, you will get a scheduling order for next steps on the merits of your claims.  If the defendants ask for a hearing, you will get an order that will explain next steps to prepare for the hearing.  Any hearing will be limited strictly to the 'dispute(s) of material fact' specifically identified in this Order.  You will not need to present evidence on anything other than what is specifically identified.  If a hearing is scheduled, you will be allowed to present evidence and testimony on your own behalf.  Details about a future hearing will be provided by future order if one is scheduled.  You do not need to do anything now.  The Defendants have 14 days to file a motion about what they want to do.  You will get a copy of that motion, and you will get further instructions once the Defendants have filed their motion.  Please be aware that there can be delays in the mailing of copies, so you should wait at least 30 days before asking for the status of this matter.